(No. 60025.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. EARL COWAN, Appellee.

*Opinion filed January 23, 1985.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Michael E. Shabat and Maureen A. Harton, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin, Kathleen M. McGinnis, Judith A. Stewart and Karen E. Tietz, Assistant Public Defenders, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

A jury in the circuit court of Cook County found the defendant, Earl Cowan, guilty of attempted burglary and unlawful restraint (Ill. Rev. Stat. 1979, ch. 38, pars. 8—4, 10—3). The appellate court reversed the conviction and in a split decision remanded the cause to the circuit court for a new trial. (122 Ill. App. 3d 394.) We granted the State's petition for leave to appeal under Rule 315 (87 Ill. 2d R. 315).

The defendant was charged in a nine-count criminal information with two counts of armed robbery, two counts of armed violence, and one count each of home invasion, burglary, aggravated kidnaping, attempted burglary, and unlawful restraint. The trial lasted five days. Seven witnesses testified for the State. Two witnesses and the accused testified for the defense, and there was one rebuttal witness. The prosecution's principal witness, James Wolfe, testified that the defendant broke into the apartment of Michael Dermody, an elderly friend of Wolfe's, and robbed both men at knifepoint. Wolfe said that he was forced to assist the defendant in moving Dermody's stereo and television set to the apartment of the defendant's brother. The defendant's testimony was that Wolfe invited him into Dermody's apartment for homosexual activity and that the stereo and television were taken to his brother's apartment because Wolfe

had asked the defendant to repair them.

The jury began deliberations at noon on the fifth day of trial. Sometime before 4 o'clock that afternoon (the record does not show the exact time), the jury sent a note to the judge asking for a transcript of the testimony. The request was denied and the judge instructed the jury to continue its deliberations. Shortly after four o'clock, the jury sent a second message:

"4:14

Your Honor—
    We are totally deadlocked. There is no way that we will be able unanimously agree [*sic*] one way or another. The evidence is inconclusive.

Bill Frey
Foreperson"

The court did not respond and allowed the jury to continue deliberating. Sometime before 7 p.m., the jury sent a third note:

"Your Honor—
    We have carefully deliberated each and every charge and we are completely and hopelessly unable to unanimously agree on either a guilty or not guilty verdict. We believe that further progress is 'impossible' (6 votes) 'unlikely' (6 votes).

William Frey — Foreperson"

Again, the court did not respond. The jury was sequestered at 7 p.m. and resumed deliberations at 9 o'clock the following morning. After 45 minutes, the jury sent the court this message:

"6/16/82

Your Honor               9:45
    This jury will never reach a unanimous decision on any of the nine counts.

Bill Frey
Foreperson"

At that point the court called the prosecutor and defense counsel into chambers and notified them of the four

notes. The court told them that it had not considered that the jury was in fact deadlocked on all counts until it received the last note. The prosecutor requested that the jury be given the supplemental instruction set out in *People v. Prim* (1972), 53 Ill. 2d 62, 75-76, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731:

"The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case."

Defense counsel asked that the jury simply be instructed to continue deliberating. The court did give the *Prim* instruction, and the jury, after further deliberation, returned a verdict of guilty on the counts charging attempted burglary and unlawful restraint, and a verdict of not guilty on the other counts. The defendant had an extensive criminal record and was given consecutive extended-term sentences of 10 years for the attempted burglary and six years for the unlawful restraint.

The defendant does not question the correctness of the instruction but contends that under the circumstances the giving of it was coercive. He argues that the court's failure to respond to the first notes had the effect of im-

properly hastening a verdict when the *Prim* instruction finally was given. The jury's comments showed, he says, that it was not satisfied with the evidence and that the split verdicts indicated that the verdicts of guilty were a result of compromise.

In *Prim*, this court was concerned with tailoring an instruction appropriate to guide but not coerce a jury that is unable to reach a verdict. The court noted that while there may be danger of coercion through a supplemental instruction, members of a jury, especially those voting in the minority, who are left without any guidance from the court may also feel some coercive influence. (*People v. Prim* (1972), 53 Ill. 2d 62, 74.) The time when a supplemental instruction should be given is for the court to decide. This court said in *People v. Preston* (1979), 76 Ill. 2d 274, that "it is primarily the function of the trial court to determine, on the basis of such factors as the length of time already spent in deliberation and the complexity of the issues before the jury, when the giving of the supplemental instruction becomes appropriate." (76 Ill. 2d 274, 283-84.) The trial court has discretion to have the jury continue its deliberation even though the jury has reported that it is deadlocked and will be unable to reach a verdict. *People v. Harris* (1981), 96 Ill. App. 3d 970, 975-76; *People v. Allen* (1977), 47 Ill. App. 3d 900, 906.

The court did not abuse discretion in allowing the jury to deliberate for eight hours without intervening to give the supplemental instruction. There had been a five-day trial on nine serious charges. The jury had to weigh the testimony of 11 witnesses, including that of the accused, who had placed his credibility at issue by directly contradicting the account given by the State's principal witness. The defendant gives mistaken importance to the fact that the court did not respond to the first two notes. The first note came after just four hours of deliberations, and the second came within the next three hours. While indicating

that the jury was unable to agree, the second note suggested that half of the jurors believed that, although "unlikely," there was some hope of agreement. At that point, the record shows that the trial court observed: "[B]ecause of the great number of verdict forms [it] was highly possible there might be a disagreement on one or more (counts) but not all." Considering this, it was not unreasonable for the court to allow further deliberation.

The jury was sequestered for the night and, after 45 minutes of deliberation the next morning, sent its third note to the court. As stated, the record shows that the court only then judged that the jury was deadlocked on all of the charges. The court gave the *Prim* instruction, and later the verdicts were returned. Under the circumstances in this record, we judge that the giving of the instruction did not coerce the jury into returning verdicts of guilty.

The defendant's contention that the return of split verdicts shows that the jury was coerced is not persuasive. There were nine separate charges, and that the evidence may not have been evenly convincing as to each charge certainly is not unusual. In fact, that there were split verdicts suggests a jury that considered each charge separately and carefully rather than a jury that was coerced. *People v. Harris* (1981), 96 Ill. App. 3d 970, 976.

It is not inappropriate to note that the defendant chose not to have the jurors polled. While a defendant need not poll jurors in order to preserve a contention of coercion, to waive the right to poll appears to be at odds with a belief that the jurors were coerced.

For the reasons stated, the judgment of the appellate court is reversed, and the cause is remanded to the appellate court for its consideration of the issues remaining on the appeal to that court.

*Reversed and remanded,*
*with directions.*